FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 23 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

SEAN CHANEY,

                                Petitioner,

-against-

UNITED STATES,

                                Respondent.
-------------------------------------------------------------------- X

07-CV-3861 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION
AND ORDER

ROSS, United States District Judge:

      Petitioner pro se, Sean Chaney, filed letters with this court dated April 15, 2007, July 9, 2007, and July 30, 2007, asking for reduction of the sentence imposed on him in case No. 05-CR-596-2 and claiming that his trial counsel was constitutionally ineffective. (Dkt. No. 1). More specifically, his letters allege that the court erroneously applied the Sentencing Guidelines by failing to adjust his sentence in this federal case to run concurrently with a prior sentence imposed on him by a New York State court, and that he received ineffective assistance of counsel because his lawyer failed to raise appropriate objections at his sentencing proceeding and neglected to file an appeal challenging his erroneous sentence. By Order dated August 16, 2007, entered pursuant to Adams v. United States, 155 F.3d 582 (2d Cir. 1988), the court recharacterized these letters as a petition for a writ of habeas corpus under 28 U.S.C. § 2255. (Dkt. No. 3). For the reasons set forth below, the petition is denied in its entirety.

1

## FACTS AND PROCEDURAL HISTORY

Petitioner was arrested by New York State authorities in December of 2002 for robberies committed in Queens and Nassau counties between November and December of 2002, culminating in the December 13, 2002 robbery of a Melissa Check Cashing establishment located in Queens, New York. Thereafter, he was convicted in New York State court for his participation in the Melissa Check Cashing robbery and sentenced to five years' imprisonment. See Presentencing Report, Chaney v. United States, No. 05-CR-596-2 at ¶¶ 11, 63 (E.D.N.Y. Oct. 6, 2006) (hereinafter "PSR").

Petitioner was arrested by federal authorities in September 2005 and charged in a multi-count federal indictment. On April 4, 2006, he pled guilty pursuant to a plea agreement to three counts of that indictment, which charged conspiracy to commit Hobbs Act robbery (Count 1), the robbery of the J&J Deli in December of 2002 (Count 6), and the use of a firearm in connection with the J&J Deli robbery (Count 7). The plea agreement estimated petitioner's advisory sentencing guideline range on the Hobbs Act counts (Counts 1 and 6) to be concurrent terms of 37 to 46 months' imprisonment, to be followed by a mandatory minimum consecutive term of 120 months on the firearms count (Count 7). See Plea Agreement, submitted as Ex. A to Govt's Letter in Opp'n, at *1 (Dkt. No. 4) (hereinafter "Plea Agreement.").

Petitioner's guidelines range as calculated in the Presentence Report ("PSR") substantially exceeded the plea agreement's estimate. With respect to the Hobbs Act conspiracy, the PSR applied USSG § 1B1.2(d), calculating petitioner's guideline sentence on that count as incorporating his conviction for each of the fourteen separate robberies committed in furtherance of the conspiracy, including the Melissa Check Cashing robbery. See PSR at ¶ 47-53. As a result, coupled with a higher calculation of petitioner's criminal history category, the PSR calculated petitioner's guidelines

2

range on the conspiracy and substantive Hobbs Act counts as 210 to 262 months' imprisonment. As noted, the plea agreement, by contrast, had calculated petitioner's guidelines range on these two counts at 37 to 46 months' imprisonment. Both the PSR and the plea agreement calculated the mandatory ten year consecutive sentence on the firearms conviction. See Plea Agreement at 4.

At sentencing, the court noted the substantial discrepancy between the PSR's guidelines calculation and the estimate set forth in the plea agreement. See Transcript of Sentence, United States v. Chaney, No. 05-596-2 (E.D.N.Y. Dec. 18, 2006) (Dkt. No. 127), at * 2 (hereinafter "Sent. Trans."). Defense counsel and the then-assigned Assistant United States Attorney concurred, but both also asserted that a non-guidelines sentence within the range set forth in the plea agreement's guidelines estimate would be a reasonable one under the sentencing statute, 18 U.S.C. § 3553(a). See id. at 3:1-5. Following a discussion on the record of the bases for such a reduction from the advisory guidelines, including the far lower estimate in the plea agreement, petitioner's youth, and other factors enumerated by defense counsel such as petitioner's family circumstances and his efforts at rehabilitation, see id. at 3-5, 13-16, the court imposed a non-guidelines sentence of 46 months' imprisonment to run concurrently on Counts One and Six, followed by a consecutive term of 120 months' imprisonment on Count Seven.

At sentencing, defense counsel argued that, under USSG § 5G1.3(b), petitioner's 168 month federal sentence should be imposed to run concurrently with the undischarged five year term of imprisonment he was then serving in New York State prison upon his conviction for the Melissa Check Cashing robbery. See id. at 13:1-24. Observing that the 46 month non-guideline sentence being imposed on the Hobbs Act charges did not take into account petitioner's conduct in the Melissa Check Cashing robbery, the court rejected the argument, and also rejected counsel's further

3

contention that the sentence should be imposed partially concurrently pursuant to USSG § 5B1.3(c). Id. at 12:13-17, 13:17-21.

At the conclusion of the sentencing proceeding, the court told petitioner of his right to appeal his sentence, explaining the requirement that any notice of appeal must be filed within ten days. See id. at 22:21-25. Petitioner was also advised that should he chose to appeal, his attorney would continue to represent him. Id. Because judgment was filed on December 20, 2006, petitioner was required to file a notice of appeal by January 3, 2007. No notice of appeal was ever filed.

As noted, petitioner now argues that (1) § 5G1.3(b) of the Sentencing Guidelines mandated that his federal sentence be imposed to run concurrently with his previously imposed state sentence, and (2) his lawyer was ineffective for (a) failing to object to the assertedly incorrect calculation of his sentence and (b) failing to file an appeal challenging his sentence.

## DISCUSSION

### A. The Sentencing Claim

As set forth below, petitioner's sentencing claim is procedurally barred and fails on the merits.

#### 1. Procedural Default

A petitioner who fails to assert a claim on direct appeal is procedurally "barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." De Jesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998). Petitioner here did not raise his sentencing claim on direct appeal. The claim is thus procedurally barred absent proof of both cause and prejudice or proof of actual innocence. Id.

4

Although establishing that defense counsel rendered constitutionally defective assistance may constitute cause for the procedural default, see Sapia v. United States, 433 F.3d 212, 217-18 (2005), petitioner cannot meet his burden of establishing that counsel's ineffectiveness caused his failure to appeal. As discussed in detail below (infra at pp. 8-14), there is no basis in the record to conclude that counsel failed to file an appeal after a timely request by petitioner or that counsel was in any way ineffective in failing to consult with petitioner regarding the filing of an appeal. Accordingly, counsel's conduct cannot excuse petitioner's default.

Nor could petitioner demonstrate prejudice from the default even if counsel's conduct constituted cause. "For a prejudice inquiry in a case such as this, the 'question is whether, but for the lapse, there is a reasonable probability the sentence would have been the same.'" Id. at 218 (quoting Johnson v. United States, 313 F. 3d 815, 818 (2d Cir.2002)). As also addressed fully below (infra at pp. 7-8), there is no reasonable likelihood that, had petitioner raised his sentencing claim on appeal, the Second Circuit would have held that USSG § 5G1.3(b) mandated that his non-guidelines sentence be served concurrently with his previously imposed New York State sentence. This is especially so given the court's explicit determination not to consider the criminal conduct that was the subject of the state sentence in formulating petitioner's non-guidelines sentence.

Absent any showing of cause and prejudice and any allegation of actual innocence, petitioner's sentencing claim must be dismissed as procedurally defaulted.

### 2. The Merits

The thrust of petitioner's sentencing claim is that, although the court imposed on him a non-guidelines sentence substantially below the range of imprisonment called for by the Sentencing

Guidelines, he was nonetheless entitled, pursuant to USSG § 5G1.3(b), to have his federal sentence imposed concurrently with his prior state sentence. The argument is meritless not only because it assumes that an advisory sentencing guideline is mandatorily applicable to adjust a non-guidelines sentence, but also because it is founded on a misinterpretation (and thus misapplication) of the advisory guideline.

Pursuant to United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory only, although, in determining an appropriate sentence, a court must consider the advisory range along with all of the other sentencing factors enumerated in 18 U.S.C. § 3553(a). Morever, under 18 U.S.C. § 3584, when, at the time of sentence, a defendant is subject to an undischarged term of imprisonment, a court may impose the new sentence to run concurrently or consecutively. This determination, too, is governed by a consideration of the factors set forth in § 3553(a), which include the Sentencing Commission's policy statements. See 18 U.S.C. § 3584(b), 18 U.S.C. § 3553(a)(5)(A).

USSG § 5G1.3 provides that if the undischarged term of imprisonment results from an offense that is "relevant conduct to the instant offense [. . .] and that was the basis for an increase in the offense level," the sentence for the instant offense must be adjusted to credit defendant with time already served on the prior sentence, and the remaining term must be imposed to run concurrently with the prior sentence. However, if the undischarged term resulted from an offense that is not conduct "relevant" to the instant offense or did not form "the basis for an increase in the offense level," the new sentence may be imposed concurrently, partially concurrently, or consecutively to the prior sentence "to achieve a reasonable punishment for the instant offense."

At the outset, it has never been disputed that the PSR accurately calcuated petitioner's Sentencing Guidelines range. That calculation, which explicitly accounted for petitioner's participation in the fourteen separate robberies committed in furtherance of the Hobbs Act conspiracy, including the final Melissa Check Cashing robbery, resulted in a guidelines range for the three counts of conviction of 330 to 382 months' imprisonment. Had petitioner been sentenced under the advisory guidelines, he would have been entitled, under USSG § 5G1.1(b), to be credited for the 60 month sentence he received in the state for his participation in te Melissa Check Cashing robbery by adjusting the federal sentence to account for state time already served and running the remainder of the federal sentence concurrently with the undischarged term. Hence, his total punishment for his offenses under the federal sentencing guidelines would have ranged from 270 to 322 months' imprisonment.

Instead, notwithstanding some hesitation, the court accepted both parties' arguments that a non-guidelines sentence within the range estimated in the plea agreement would be a reasonable one under the circumstances, and sentenced petitioner to a term of 168 months' imprisonment for the three counts of conviction. Since this sentence did not take into account a substantial portion of petitioner's criminal conduct, including his participation in the Melissa Check Cashing robbery, the court refused defense counsel's request that the sentence be adjusted to run concurrently with his New York State sentence. Hence, petitioner's punishment for all of his criminal conduct during the relevant period – that is, his state and federal sentences combined, totaled 228 months' imprisonment, or approximately four years less than the total punishment that would have been imposed had petitioner been sentenced at the bottom of his advisory guidelines range.

Since the court acceded to counsels' urging that it apply a lower non-guideline sentence that did not take into account much of petitioner's criminal activity, and, in assessing an appropriate sentence, explicitly did not consider petitioner's participation in the Melissa Check Cashing robbery, USSG § 5G1.3(b) did not require the court to run petitioner's sentence concurrently with his New York State sentence, which punished petitioner solely for the Melissa robbery. Rather, the court had discretion under 18 U.S.C. § 3584(b) and § 3553(a) and the policy statements to USSG § 5G1.3 to fashion a sentence that would "achieve a reasonable incremental punishment." Accordingly, petitioner's sentencing claim is entirely without merit.

### B. Claimed Ineffective Assistance of Counsel

Petitioner's argument that his counsel was constitutionally ineffective for failing to recognize and object to the asserted sentencing error and failing to file a notice of appeal fares no better.

In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 698. A court need not decide both prongs of the Strickland test if a party has made an insufficient showing on one of them. See id. at 697.

#### 1. Failure to Object at Sentencing

Petitioner's claim that his counsel was ineffective during the sentencing proceeding for failing to appreciate and object to the court's asserted error in imposing his federal sentence to run

8

consecutively to his New York State sentence is plainly belied by the record. In an effort to persuade the court to impose the sentences concurrently, petitioner's counsel first submitted a lengthy sentencing memorandum addressing the claim. See Sentencing Memorandum by Sean Chaney, United States v. Chaney, No. 05-596-2 (E.D.N.Y. Nov. 17, 2006) (Dkt. No. 102) at *11-12. When, during the sentencing proceeding, the court refused counsel's request, counsel pressed for further explanation for the court's rationale. See Sent. Trans. at 13. Then, apparently appreciating that the requested concurrency actually ran counter to the policy of the guideline, counsel launched a strenuous argument that the court should exercise its discretion to impose a sentence running partially concurrently and partially consecutively to the undischarged state sentence, as contemplated by subsection (c) of the guideline. See id. Hence, counsel cannot be faulted for failing to recognize or press the point. Moreover, even if counsel had altogether failed to advance the argument at sentencing, petitioner could not establish prejudice from counsel's omission because, for reasons already addressed at length, (supra at pp. 5-8), the court would not have imposed the far more lenient non-guidelines sentence concurrently with petitioner's New York State sentence in any event.

### 2. Failure to Appeal the Sentence

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court examined the circumstances in which a lawyer's failure to file a notice of appeal on behalf of a client will constitute deficient performance. First, the Court held that "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 470. If such a dereliction by counsel prevented defendant from filing an appeal, " '[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is]

presumptively unreliable'." Id. at 483 (quoting United States v. Chronic, 466 U.S. 648, 659 (1984)). In that circumstance, prejudice is presumed.

The Court then examined circumstances in which counsel failed to consult with the client concerning the filing of an appeal– that is, neglected to "advise [the client] about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover [the client's] wishes." Id. at 478. In these circumstances, the Court held: "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Such a determination, the Court clarified, involves a consideration of the totality of the circumstances. The Court also identified factors relevant to the inquiry – for example, (1) "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings;" (2) "whether the defendant received the sentence bargained for as part of the plea;" (3) "whether the plea expressly reserved or waived some or all appeal rights;" and (4) whether the "court . . . inform[ed] the defendant of his appeal rights." Id. at 479-80.

Unlike a situation in which counsel's deficient performance arguably caused the forfeiture of an appeal, however, prejudice caused by counsel's failure to consult is not presumed. Rather, the Court required a showing of actual prejudice. Specifically, it held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Again, the Court cautioned that this inquiry is a fact-intensive one and again, it enumerated

10

certain relevant factors – for example "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal . . . ." Id. at 485. Further, the Court described the inquiry as "not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal." Id. By the same token, the absence of prejudice may be demonstrated where there are "[no] substantial reasons to believe that [the defendant] would have appealed." Id. at 487.

Turning to Flores-Ortega's first ground for finding counsel's performance deficient, there is no evidence in this record that petitioner timely gave express instructions to counsel to file an appeal. Nowhere in his letters, including his reply submission on this petition, does petitioner even allege that he asked counsel to file a notice of appeal at or near the time that it was required to be filed. Rather, he alleges in conclusory fashion that he wrote letters to counsel seeking an appeal, but he fails to identify the time-frame of such requests. Defense counsel, by contrast, has submitted an affidavit specifically averring that petitioner made no mention of a desire to appeal until his letters to counsel dated in April of 2007, some three months after the time to appeal expired. See Decl. of Anthony L. Ricco at *4 (Dkt. No. 5-1); see also Letters of Sean Chaney to Anthony Ricco dated Apr. 1, 2007 and Apr. 9, 2007, submitted as Ex. A to Ricco Decl. (Dkt. No. 5-2). Counsel's assertion is corroborated by the substance of petitioner's contemporaneous letters to the court inquiring into why his federal and state sentences were not imposed to run concurrently. See Letter of Sean Chaney dated Apr. 15, 2007 at *1 (Dkt. No. 1). And its accuracy is also supported by the court's own experience with counsel's consistent candor in this and other proceedings. Absent any evidence that

counsel ignored petitioner's explicit, timely instruction to file an appeal, petitioner cannot sustain his burden of proving ineffective assistance of counsel on this ground.

On the other hand, because counsel's affidavit makes no reference to counsel's timely consultation with petitioner regarding an appeal, the court must assume that this is a case in which counsel did not specifically advise petitioner of the advantages and disadvantages of appealing or make reasonable efforts to determine his client's wishes in this regard. Nonetheless, because the record demonstrates that counsel was not constitutionally obligated to consult with petitioner concerning an appeal under the standard enunciated in Flores-Ortega and that counsel's failure to consult with him did not prejudice petitioner in the manner specified by the Supreme Court in that case, petitioner cannot establish ineffective assistance of counsel based on counsel's failure to consult.

Turning to the various factors the Supreme Court identified as inquiries relevant to both the deficient performance and the prejudice prongs in this context, there is no reason to believe that counsel's failure to consult in this case meets either aspect of the Strickland analysis. First, as discussed above, see supra, at pp. 5-8, petitioner's § 5G1.3 sentencing argument, the sole ground on which he claims he wished to appeal, is wholly meritless. There is virtually no probability that it would have been sustained on appeal. Moreover, had the Second Circuit vacated the non-guidelines sentence, the prison term imposed upon petitioner at resentencing could have fallen within the range of a traditional guidelines sentence, one far more severe than the sentence originally imposed. Nor can the court discern from the record any other nonfrivolous ground for an appeal of his sentence that petitioner might have invoked. Hence, there was no reason for counsel to believe that a rational defendant in petitioner's circumstances would have wished to appeal.

Nor did petitioner promptly express a desire to appeal. Indeed, the first indication that he wished to appeal did not emerge until April of 2007, many months after his time to appeal had expired, when he wrote counsel that he sought an appeal to challenge his consecutive sentences. Significantly, too, this is not a case in which petitioner may claim ignorance of his appellate rights. At the close of the sentencing proceeding, the court advised petitioner of those rights, as well as the limited time frame within which those rights could be exercised.

Further, petitioner's conviction followed a guilty plea, suggesting, as the Flores-Ortega Court observed, a reduced scope of potentially appealable issues and an increased likelihood that petitioner sought to end judicial proceedings. Perhaps most significantly, petitioner's sentence fell squarely within the sentence bargained for in the plea agreement, which was substantially more lenient than that called for by the Sentencing Guidelines. Finally, petitioner's appellate rights were, in any event, waived by the plea bargain.

In short, there is nothing in the record to establish that counsel was ineffective in failing to consult with petitioner concerning a possible appeal of his sentence or that petitioner was in any way prejudiced by his failure to do so.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of petitioner's claims, since petitioner failed to make a substantial showing of any denial of his constitutional rights. Petitioner has a right

to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253. The clerk of the court is instructed to enter judgment accordingly.

    SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated:    October 19, 2007
             Brooklyn, New York

SERVICE LIST:

*Pro Se* Petitioner

Sean Chaney

# 73545-053
USP Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

Attorney for Respondent

David Bitkower
United States Attorneys Office
1 Pierrepont Plaza
Brooklyn, NY 11201